**Kenneth B. McClain**
**Steven E. Crick**
**Humphrey, Farrington & McClain, P.C.**
**221 W. Lexington, Suite 400**
**Independence, MO 64050**
**(816) 836-5050**
**FAX: (816) 836-8966**
       **and**
**Richard C. Eymann, WSBA #7470**
**Eymann Allison Hunter Jones, P.S.**
**2208 W. Second Avenue**
**Spokane, WA 99201**
**(509) 747-0101**
**FAX:  (509) 458-5977**
**Attorneys for Plaintiffs**

## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **LARRY I. NEWKIRK and RUTH A. NEWKIRK** | ) No.:_____ )  |
| Plaintiffs, | ) COMPLAINT AND ) DEMAND FOR TRIAL BY |
| v. | ) JURY |
| **CONAGRA FOODS, INC.,** a Delaware Corporation      and | ) ) ) |
| **SHOPKO STORES, INC.,** a Wisconsin Corporation      and | ) ) ) |
| **SHOPKO STORES OPERATING CO., LLC,** a Delaware Corporation      and | ) ) ) |
| **SHOPKO PROPERTIES, LLC,** a Minnesota Corporation      and | ) ) ) |

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 1

| | |
|---|---|
| 1 | **BUSH BOAKE ALLEN, INC.,** ) |
| 2 | **a Virginia Corporation** ) |
| | **and** ) |
| 3 | **INTERNATIONAL FLAVORS &** ) |
| 4 | **FRAGRANCES, INC.,** ) |
| 5 | **a New York Corporation** ) |
| | **and** ) |
| 6 | **GIVAUDAN FLAVORS CORPORATION,** ) |
| 7 | **a Delaware Corporation, formerly known** ) |
| 8 | **as Givaudan-Roure Corp., and also as** ) |
| | **Givaudan-Roure Flavors Corporation** ) |
| 9 | **and also formerly known as Tastemaker** ) |
| 10 | **Corporation and also as Fries & Fries,** ) |
| 11 | **Inc. and also as Mallinckrodt Foods &** ) |
| | **Flavors, Inc. and also as Mallinckrodt** ) |
| 12 | **Flavor & Fragrances, Inc. and as a** ) |
| 13 | **partner in the partnership Tastemaker** ) |
| 14 | **and** ) |
| | **SYMRISE, INC.,** ) |
| 15 | **a New Jersey Corporation** ) |
| 16 | **and** ) |
| 17 | **JOHN DOE DEFENDANTS 1-20,** ) |
| | **Defendants.** ) |

19  COME NOW Plaintiffs, and for their causes of action against Defendants
20 ConAgra Foods, Inc., Shopko Stores, Inc., Shopko Stores Operating Co., LLC,
21 Shopko Properties, LLC, Bush Boake Allen, Inc., International Flavors & Fragrances,
22 Inc., Givaudan Flavors Corporation, Symrise, Inc. and John Doe Defendants 1-20,
23 state and allege:

### NATURE OF THE CASE/PARTIES

25  1.  Plaintiff Larry Newkirk brings this cause of action to recover for
26 personal injuries suffered as a direct and proximate result of his use of (preparing and
27 consuming) microwave popcorn designed, developed, manufactured, tested,

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 2

1  packaged, promoted, marketed, distributed, labeled and/or sold by the various Defendants named herein, his exposure to dangerous butter flavoring products as a direct result of that use and his resulting serious and permanent lung illness and disease. Plaintiff Newkirk was first diagnosed with a lung condition caused by his use of and exposure to microwave popcorn containing butter flavoring, as described herein, in August of 2008.

2.  Plaintiff Ruth Newkirk is Larry Newkirk's spouse and brings this action for her loss of consortium as a direct and proximate result of Larry Newkirk's illness and disease.

3.  The Plaintiffs reside at North 303 McDonald Road, Spokane Valley, Washington 99216.

4.  Defendant ConAgra Foods, Inc. (ConAgra) is a Delaware corporation whose principal place of business is One ConAgra Drive, Omaha, Nebraska 68102. Defendant ConAgra designs, develops, manufactures, tests, packages, promotes, markets, distributes, labels and sells microwave popcorn, including specifically microwave popcorn containing dangerous butter flavoring products sold under the brand name or label "Act II" to consumers in the State of Washington including Plaintiff Larry Newkirk.

5.  Defendants Shopko Stores, Inc., Shopko Stores Operating Co., LLC and Shopko Properties, LLC (collectively "Shopko") are Wisconsin, Delaware and Minnesota corporations respectively whose principal places of business are 700 Pilgrim Way, Green Bay, Wisconsin 54304. At all times material hereto, either Shopko individually or collectively, conducted business selling products in Washington, at among other places, the Shopko located at East 13414 Sprague Avenue, Spokane, Washington 99216. Plaintiffs regularly shopped at Shopko and purchased microwave popcorn containing dangerous butter flavoring products.

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 3

6. Defendant Bush Boake Allen, Inc. (BBA) is a Virginia corporation whose principal place of business is 521 W. 57th St., New York, New York 10019. Defendant BBA manufactured and designed butter flavors that were sold and distributed to ConAgra for use in Act II microwave popcorn.

7. Defendant International Flavors & Fragrances, Inc. (IFF) is a New York corporation whose principal place of business is 521 W. 57th St., New York, New York 10019. Defendant IFF manufactured and designed butter flavors that were sold and distributed to ConAgra for use in Act II microwave popcorn.

8. At all pertinent times, Defendants BBA and/or IFF designed, manufactured, processed, marketed and/or distributed natural and artificial butter flavorings. In the year 2000, Defendant IFF merged with Defendant BBA. In this transaction: (1) Defendant IFF expressly or impliedly agreed to assume Defendant BBA's liabilities and debts, (2) the transaction amounted to a merger of the corporations, and (3) Defendant IFF is merely a continuation of Defendant BBA.

9. Defendant Givaudan Flavors Corporation is a Delaware corporation principally located in Cincinnati, Ohio. Defendant Givaudan manufactured and designed butter flavors that were sold and distributed to ConAgra for use in Act II microwave popcorn.

10. Defendant Givaudan Flavors Corporation is the owner and operator of a flavoring plant in Cincinnati, Ohio. Defendant Givaudan was known as Fries & Fries, Inc. until 1992 when it began doing business as Tastemaker Corp. In June 1997, the entity changed its name to Givaudan-Roure Flavors Corporation and in 2000 the name was changed again to Givaudan Flavors Corporation, its current name. The corporate entity Givaudan was a general partner in a partnership called Tastemaker that operated the plant between 1992 and 1997. (Collectively these various entities are all "Givaudan")

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 4

11. Defendant Symrise, Inc. is a New Jersey corporation whose principal place of business is Teterboro, New Jersey. Symrise is the name of the entity created in 2002 after the merger of Dragoco and Haarmann & Reimer. Defendant Symrise manufactured and designed butter flavors that were sold and distributed to ConAgra for use in Act II microwave popcorn.

12. "Act II Butter" and "Act II Butter Lovers" were, upon information and belief, made between 1989 and 2007 by ConAgra.

13. "Act II Butter" and "Act II Butter Lovers" microwave popcorn contained butter flavors which were designed and manufactured for and sold to ConAgra by Defendants Givaudan, Symrise, BBA, IFF, and John Doe Defendants 1 - 20.

14. At all times pertinent, the true names and addresses of John Doe Defendants 1 - 20 have been and remain unknown despite Plaintiffs' attempts to discover their names and addresses. It is known that the John Doe Defendants are individuals, partnerships and/or corporations who are or were engaged in the business of designing, manufacturing, and/or selling microwave popcorn, butter flavoring used in such microwave popcorn and flavoring chemicals used in that butter flavoring to which Plaintiff Larry Newkirk was exposed.

15. Plaintiffs seek judgment against the Defendants, and each of them, for compensatory damages caused by Defendants' negligent design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling and/or sale of defective microwave popcorn, including natural and artificial butter flavorings and Defendants' failure to warn of the dangers thereto.

**JURISDICTION AND VENUE**

16. Jurisdiction exists pursuant to 28 U.S.C. § 1332. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

17. The amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00).

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 5

## GENERAL ALLEGATIONS

18.    Whenever reference in this Complaint is made to any act or transaction by a Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents and/or representatives of such Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of such defendant while actively engaged in the scope of his or her duties.

19.    At all pertinent times, the Defendants designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold microwave popcorn containing natural and/or artificial butter flavorings. The microwave popcorn containing butter flavor was intended by Defendants to have a butter aroma and taste.

20.    Defendants' microwave popcorn made with natural and artificial butter flavorings made with, at all times material hereto, the compound diacetyl and other compounds that volatilize during the preparation and use of the oil and flavor mixture during the microwave popcorn packaging process and during the preparation of the popcorn by consumers by cooking the popcorn in a microwave oven.

21.    Exposure to these flavoring compounds causes damage to the respiratory system in the form of asthma, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath and/or other respiratory illnesses and diseases.

22.    The Defendants knew or should have known of the hazardous nature of their natural and artificial butter flavorings and microwave popcorn containing them at the time of manufacture and/or sale and while Plaintiffs purchased, prepared and consumed their products. Defendants, and each of them, failed to warn that preparing microwave popcorn in a microwave oven as intended and smelling the buttery aroma could expose the consumer to an inhalation hazard and a risk of lung injury. All

Defendants failed to give instructions regarding the safe use of and necessity of precautions around microwave popcorn and butter flavoring. As a direct result of this failure to warn and failure to give proper instructions, Plaintiffs did not know of or appreciate the hazard posed by microwave popcorn with butter flavoring.

23. Beginning in or around 1989 and continuing into September 2007, Plaintiffs regularly purchased microwave popcorn from Shopko located at East 13414 Sprague Avenue, Spokane, Washington 99216, including specifically, but not limited to, microwave popcorn sold under the label "Act II Butter" or "Act II Butter Lovers." Plaintiff Larry Newkirk regularly prepared four to six bags of microwave popcorn each day during this time period.

24. In the course of cooking the microwave popcorn in his microwave and preparing to eat it, Plaintiff Larry Newkirk was exposed to the butter flavoring as it became heated and vaporized.

25. Plaintiff Larry Newkirk's exposure to Defendants' popcorn and natural and artificial butter flavorings directly and proximately caused personal injury, i.e., the development of sustained, severe, permanent, and/or progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function, including, but not limited to: bronchiolitis obliterans, severe and progressive damage to the respiratory system, extreme shortness of breath and reduced life expectancy. Plaintiff Larry Newkirk has further suffered and will suffer in the future, pain, discomfort, mental anguish, suffering, disability, loss of enjoyment of life, fear, anxiety, loss of sleep and other mental and emotional distress directly and proximately caused by the conduct of the Defendants.

26. As a direct and proximate result of the conduct of the Defendants, Plaintiffs have incurred and will incur in the future medical expenses for physicians, surgeons, nurses, hospitals, x-rays and other medical treatment.

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 7

27.   As a further direct and proximate result of the stated conduct of the Defendants, Plaintiffs have incurred and will incur loss of income, wages, profits and commissions, a diminishment of earning potential, lost earning capacity, future economic loss, out-of-pocket expenses and other pecuniary losses. Plaintiffs' actions pled herein are not premised upon Plaintiff Newkirk's weight gain, obesity, or a health condition associated with the Plaintiff's weight gain or obesity based on Plaintiff's consumption of food, as described in RCW 7.72.070.

## COUNT I
### (Negligence)

28.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-27 of this Complaint as if fully set forth above.

29.   Defendants designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold microwave popcorn and/or their butter flavorings and ingredients intended to be cooked in a microwave oven, to be tasted and to have a pleasant aroma or smell.

30.   Defendants ConAgra, Shopko and John Doe Defendants 1-20's microwave popcorn contained butter flavoring including flavoring ingredients which, when used as intended, were highly likely to cause and/or be a substantial contributing factor in causing the following human illnesses, injuries and conditions:

    a.   bronchiolitis obliterans,
    b.   respiratory disease,
    c.   severe impairment of lung function, and
    d.   other types of diseases and injuries associated with butter flavorings and their constituents.

31.   Defendants Givaudan, Symrise, BBA, IFF and John Doe 1-20's butter flavoring products which, when used as intended, were highly likely to cause and/or be a substantial contributing factor in causing the following human illnesses, injuries

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 8

and conditions:

    a.    bronchiolitis obliterans,

    b.    respiratory disease,

    c.    severe impairment of lung function, and

    d.    other types of diseases and injuries associated with butter flavorings and their constituents.

32.    At all times material, the ordinary consumer, including Plaintiff Larry Newkirk, did not know of the likelihood of, the severity of or the extent of the risks from Defendants' butter flavorings.

33.    Defendants at all times material had and breached the following legal duties to consumers including Plaintiffs:

    a.    the duty to warn all foreseeable users, including consumers, of Defendants' microwave popcorn and/or butter flavoring products of the likelihood, probability and/or foreseeability that the harms listed herein would or might occur if the products were used as intended;

    b.    the duty to acquire, maintain and apply the best scientific knowledge available in the field of microwave popcorn and butter flavor design, development, manufacture, testing, packaging promotion, marketing, distribution, labeling and/or sale of microwave popcorn and/or their butter flavorings;

    c.    the duty to test, design, manufacture and sell microwave popcorn and butter flavorings that when used as intended were reasonably safe for all foreseeable users and consumers such as Plaintiffs;

    d.    the duty to make feasible improvements in design, composition, or manufacture of microwave popcorn, and specifically the butter flavorings that would eliminate or decrease the risk to users and

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 9

consumers such as Plaintiffs from an inhalation hazard;

e. the duty to disclose to all foreseeable users and consumers the results of their own scientific research and other scientific research known to them indicating that the use of microwave popcorn and butter flavorings and/or their constituents cause serious risks of harm;

f. the duty to warn all foreseeable users and consumers of the known dangers of microwave popcorn, butter flavorings and/or their constituents;

g. the continuing duty to warn all foreseeable users and consumers of their microwave popcorn and butter flavoring products concerning defects of which the Defendants acquired knowledge after the product was manufactured or sold;

h. the duty to provide the post-marketing warning or instruction that a manufacturer and/or seller exercising reasonable care would have provided concerning the risk, in light of the likelihood that the products would cause consumers such as Plaintiffs injuries and in light of the likely seriousness of these injuries; and

i. the duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation: the duty to test their food products and food flavors and ingredients, the duty to acquire and maintain the knowledge of an expert to design, manufacture, process, distribute, market, sell, and/or supply their products free from defects and/or latent defects, and the duty to adequately warn of product defects and/or

hazards, which duty continued even after the sale of said products.

34. Defendants were negligent and at fault in causing Plaintiff Larry Newkirk's claimed injuries and damages with regard to the subject microwave popcorn and/or butter flavoring by failing to design, manufacture and/or distribute a reasonably safe product as described above.

35. Defendants' negligent conduct violated the provisions of RCW 7.72, et seq.

36. As a direct and proximate result of Defendants' negligence, Plaintiff Larry Newkirk has developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system and/or impairment of the ability to function. Plaintiffs have suffered and continue to suffer damages including, but not limited to, physical pain and suffering, loss of consortium, mental anguish and emotional distress, loss of enjoyment of life, loss of ability to function as a whole person, permanent impairment, disability and/or loss of sleep and natural rest. In addition, Plaintiffs have suffered and will suffer lost wages, lost earning capacity and future economic loss and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices and other out-of-pocket expenses.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, for compensatory damages together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT II

### (Strict Liability in Tort -- Design Defect)

37. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-36 as if fully set forth hereunder.

38. Defendants ConAgra and Shopko manufactured, sold and/or distributed

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 11

or otherwise placed into the stream of commerce microwave popcorn containing butter flavoring products and other products containing diacetyl within the ordinary course of their businesses.

39. Defendants Givaudan, Symrise, BBA, IFF and John Doe Defendants 1-20 manufactured, sold and/or distributed or otherwise placed into the stream of commerce butter flavoring products containing diacetyl within the ordinary course of their businesses.

40. When Plaintiff Larry Newkirk was exposed to the Defendants' products:

    a. said food and flavor products were more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and/or

    b. the foreseeable risks associated with the design or formulation of the food and flavor products exceeded the benefits associated with their design or formulation, in that:

        i. the nature and magnitude of the risks of harm associated with the design or formulation of said products, in light of the intended and reasonably foreseeable uses, modifications and alterations of said products, outweighed the intended or actual utility of said designs and formulations;

        ii. consumers, including Plaintiff Larry Newkirk, would not likely be aware, whether based on warnings, general knowledge or otherwise of the risks of harm;

        iii. it was likely that the design or formulation of the Defendants' microwave popcorn containing natural and artificial butter flavorings and other products containing diacetyl would cause harm in light of their intended and reasonably foreseeable uses, modifications and alterations;

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 12

    iv. there was no performance or safety advantages associated with the design or formulation of Defendants' products; and

    v. Defendants possessed both the technical and economic feasibility of using an alternative design or formulation when the products left the control of Defendants.

41. Plaintiff Larry Newkirk used, smelled and inhaled the butter aroma and vapors and also ate Defendants' food and flavor products in an intended and reasonably foreseeable manner.

42. At the time of the design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling and/or sale of the Defendants' microwave popcorn and popcorn flavor products, said products were defective as designed when put to the use anticipated by the Defendants as a result, among other things, of their butter flavorings and other products containing diacetyl and other compounds having the propensity to cause damage to the respiratory system in the form of asthma, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath and other respiratory illnesses.

43. As a result of said Defendants' food and flavor products' propensity to cause respiratory disease as described above, the Defendants' products were unreasonably dangerous and defective when put to the intended and reasonably foreseeable use anticipated by the Defendants.

44. Plaintiffs' harm was not caused by an inherent characteristic of Defendants' products which is a generic aspect of their products that cannot be eliminated without substantially compromising the products' usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 13

45.     A practical and technically feasible alternative design or formulation was available for Defendants' products that would have prevented the harm to Plaintiffs without substantially impairing the usefulness or intended purpose of Defendants' products.

46.     Defendants are strictly liable to Plaintiff Larry Newkirk for his claimed injuries and damages with regard to the subject microwave popcorn and/or butter flavoring because the product was not reasonably safe as described above.

47.     Defendants are strictly liable to Plaintiff Larry Newkirk for plaintiff's injuries and damages pursuant to RCW 7.72, et seq.

48.     As a direct and proximate result of the dangerous and defective condition of the Defendants' products and the Defendants' failure to warn of the dangers thereof, Plaintiff Larry Newkirk has developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function.  Plaintiffs have suffered and continue to suffer damages including, but not limited to, physical pain and suffering, loss of consortium, mental anguish and emotional distress, loss of enjoyment of life, loss of ability to function as a whole person, permanent impairment, disability and/or loss of sleep and natural rest.  In addition, Plaintiffs have suffered and will suffer lost wages, lost earning capacity and future economic loss, and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices and other out-of-pocket expenses.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, for compensatory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 14

# COUNT III

## (Failure to Warn)

49. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-48 as if fully set forth hereunder.

50. The Defendants designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, supplied, and labeled/sold their microwave popcorn containing butter flavorings and/or the butter flavoring products without adequate instructions on their safe use to reduce and/or eliminate exposure thereto, and/or without warnings that the products contained substances that are dangerous to health and life and cause severe respiratory diseases.

51. Defendants knew or in the exercise of reasonable care should have known about the health risks associated with exposure to the butter flavoring products contained in microwave popcorn.

52. Defendants failed to provide the post-marketing warning or instruction that a manufacturer/supplier/distributor/seller exercising reasonable care would have provided concerning the risk, in light of the likelihood that the products would cause consumers, including Plaintiff Larry Newkirk, injuries and in light of the likely seriousness of these injuries.

53. The health risks associated with Defendants' microwave popcorn and food flavoring products were not open and obvious or of a type that is a matter of common knowledge.

54. As a result of said Defendants' failure to adequately instruct and warn of the dangerous characteristics of their products, said products were defective and unreasonably dangerous when put to the use reasonably anticipated by the Defendants.

55. As a direct and proximate result of the dangerous and defective condition of the Defendants' products and the Defendants' failure to warn of the dangers

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 15

thereof, Plaintiff Larry Newkirk has developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function. Plaintiffs have suffered and continue to suffer damages including, but not limited to physical pain and suffering, loss of consortium, mental anguish and emotional distress, loss of enjoyment of life, loss of ability to function as a whole person, permanent impairment, disability and/or loss of sleep and natural rest. In addition, Plaintiffs have suffered and will suffer lost wages, lost earning capacity and future economic loss and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices and other out-of-pocket expenses.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, for compensatory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT IV

### (Violation of Washington Consumer Protection Act)

### (RCW 19.86.010, et seq.)

56. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-55 as if fully set forth hereunder.

57. Defendants ConAgra, Shopko and John Doe Defendants 1-20 are designers, manufacturers, promoters, marketers, developers, sellers and/or distributors of microwave popcorn including specifically microwave popcorn sold under the label/brand "Act II."

58. Defendants Givaudan, Symrise, IFF, BBA and John Doe Defendants 1-20 are designers, manufacturers and/or sellers of butter flavoring created with the intent that they be used in microwave popcorn sold for use by consumers such as Plaintiffs.

59. Defendants ConAgra, Shopko and John Doe Defendants 1-20 knew or

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 16

should have known that microwave popcorn containing butter flavoring products, including diacetyl, was unreasonably dangerous and defective and had a propensity to cause serious and potentially life-threatening side effects. Notwithstanding the foregoing, Defendants ConAgra, Shopko and John Doe Defendants 1-20 omitted material facts concerning the use of and safety of microwave popcorn containing butter flavoring in the statements made to consumers such as Plaintiff Larry Newkirk and the general public.

60. Defendants Givaudan, Symrise, IFF, BBA and John Doe Defendants 1-20 knew or should have known that microwave popcorn containing butter flavoring products, including diacetyl, was unreasonably dangerous and defective and had a propensity to cause serious and potentially life-threatening side effects. Notwithstanding the foregoing, Defendants Givaudan, Symrise, IFF, BBA and John Doe Defendants 1-20 omitted material facts concerning the use of and safety of microwave popcorn containing butter flavoring in the statements made to consumers such as Plaintiff Larry Newkirk and the general public.

61. Defendants' acts and representations described herein constitute unfair and deceptive acts or practices in the conduct of trade or commerce which affect the public interest within the meaning of the Washington Consumer Protection Act, RCW 19.86.090.

62. Defendants have violated the Washington Consumer Protection Act, RCW 19.86.010, et seq. Defendants used deception, fraud, false promise, misrepresentation and/or unfair practices in their packaging, labeling, distributing, marketing, promoting and selling of microwave popcorn with butter flavoring in the State of Washington.

63. Defendants' practices of promoting, marketing and labeling microwave popcorn with butter flavoring and/or of marketing and labeling butter flavoring created and/or reinforced a false impression as to its safety and placed all consumers

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 17

of such microwave popcorn at risk for serious injury and potentially death. Defendants' statements and/or omissions were made with the intent that Plaintiff Larry Newkirk would rely on such statements and/or omissions.

64. Plaintiffs purchased, prepared and consumed microwave popcorn including specifically "Act II Butter" and "Act II Butter Lovers" microwave popcorn for personal purposes and suffered an ascertainable loss of money as a result of Defendants' use or employment of the unlawful methods, acts or practices described and alleged herein.

65. As a direct and proximate result of Defendants' unlawful practices alleged herein, Plaintiffs have suffered ascertainable loss, i.e., economic loss that includes the purchase of the microwave popcorn despite it being unfit for use by a consumer and additional out-of-pocket healthcare related costs, for which Defendants are liable to Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, for compensatory damages, treble damages, statutory damages and fees, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT V

### Loss of Consortium and Claim for Medical Expenses

**(Plaintiff Ruth Newkirk)**

66. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-65 as if fully set forth hereunder.

67. As a direct result of the aforementioned conduct of Defendants more fully described in Counts I, II, III and IV, Plaintiff Ruth Newkirk sustained loss of her spouse's consortium, society, companionship, comfort, protection, care, attention, advice and counsel, and guidance; loss of her spouse's financial support, loss of her spouse's services and has incurred medical and medical monitoring expenses which

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 18

will continue to be incurred in the future.

WHEREFORE, Plaintiff Ruth Newkirk demands judgment against Defendants, and each of them, for compensatory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## Demand for Trial by Jury

68. Plaintiffs demand a trial by jury on all issues in this matter.

## Prayer for Relief

Plaintiffs request that the Court enter judgment against Defendants as follows:

1. Awarding Plaintiffs' special damages including, but not limited to, past and future medical expenses, lost wages, lost earning capacity, future economic loss, out-of-pocket expenses and other special damages, all in amounts to be proven at the time of trial;

2. Awarding Plaintiffs general damages including, but not limited to, past and future pain and suffering, mental anguish, emotional distress, disability, permanent impairment, loss of enjoyment of life and other general damages, all in amounts to be proven at the time of trial;

3. Awarding Plaintiff Ruth Newkirk for the loss of her spouse's consortium, society, companionship, comfort, protection, care, attention, advice, counsel and guidance, in an amount to be proven at the time of trial;

4. Awarding prejudgment interest;

5. Awarding all remedies available under the Washington Consumer Protection Act (RCW 19.86.010, et seq.);

6. Awarding Plaintiffs' statutory damages, costs, disbursements and attorneys' fees incurred in this action; and

7. Awarding Plaintiffs' any additional or further relief which the Court finds equitable, appropriate or just.

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 19

Dated: September 4, 2008

Respectfully Submitted,

 s/Richard C. Eymann
EYMANN ALLISON HUNTER & JONES, P.S.
Richard C. Eymann, WSBA #7470
eymann@eahjlaw.com
2208 West 2nd Avenue
Spokane, WA 99201
(509) 747-0101
FAX: (509) 458-5977
    And
HUMPHREY, FARRINGTON & McCLAIN, P.C.
Kenneth B. McClain
kbm@hfmlegal.com
Steven E. Crick
sec@hfmlegal.com
Scott A. Britton-Mehlisch
sbm@hfmlegal.com
Christopher R. Miller
crm@hfmlegal.com
221 West Lexington, Suite 400
Independence, Missouri 64051
Telephone:  (816) 836-5050
Facsimile:   (816) 836-8966

ATTORNEYS FOR PLAINTIFFS

COMPLAINT AND DEMAND FOR TRIAL BY JURY - 20